**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re*: **Involuntary Hospitalization of C.M.**

**No. 15-0997** (Kanawha County 15-MH-1089)

**FILED**

**April 10, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner C.M., by counsel C. Joan Parker, appeals the September 12, 2015, order of the Mental Hygiene Commissioner of Kanawha County ("Commissioner") committing her to a psychiatric hospital upon a finding of probable cause that petitioner was likely to harm herself or others.[1] The State of West Virginia, by counsel Allison Carroll Anderson, filed its response in support of the Commissioner's order. West Virginia Advocates, Inc., as amicus curiae, by counsel Regenia L. Mayne, filed a brief in support of petitioner's appeal. Petitioner filed a reply. On appeal, petitioner argues that the Commissioner failed to consider all relevant and reliable evidence, failed to make specific findings of fact before ruling that petitioner was drug addicted and mentally ill, and failed to conclude that West Virginia Code §§ 27-5-1 to -11 is unconstitutionally vague.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, we find that the circuit court erred with respect to its denial of petitioner's motion to alter or amend judgment. For these reasons, a memorandum decision reversing the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In September of 2015, petitioner was transported, by ambulance, to Charleston Area Medical Center ("CAMC") after attempting suicide. Upon admission to the CAMC emergency room, petitioner reportedly told hospital staff that she attempted suicide because she was in "chronic long term pain." Specifically, petitioner stated that she intentionally overdosed on her prescribed insulin for the management of her diabetes earlier in the day and that, if she was sent home, she would attempt suicide again, stating "I will do a better job and not be back."

A hospital crisis worker filed an application for involuntary custody for mental health examination pursuant to West Virginia Code § 27-5-2. Subsequently, a licensed independent

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.,* 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.,* 183 W.Va. 641, 398 S.E.2d 123 (1990).

1

clinical social worker examined petitioner and determined that it was probable that petitioner would engage in additional self-harmful behavior and the probability of harmful behavior required her immediate hospitalization. Following the social worker's determination, the Commissioner held a probable cause hearing and petitioner was appointed counsel. At the hearing, the hospital crisis worker and the social worker both testified that petitioner told them that she attempted suicide, wanted to die, and would attempt suicide again. Petitioner admitted that she was clinically depressed and addicted to prescription Valium. She also testified that she "would welcome death anytime." At the close of the evidence, the Commissioner found probable cause that petitioner was addicted to drugs, a danger to herself, suicidal, mentally ill, and in need of in-patient psychiatric treatment. Upon the Commissioner's probable cause finding, petitioner was involuntarily hospitalized, pursuant to West Virginia Code § 27-5-2, by order entered on September 12, 2015. Following the probable cause hearing and her involuntarily hospitalization, petitioner was treated and released. It is not clear from the record how long petitioner was involuntarily hospitalized or when she was discharged. In January of 2016, petitioner filed the instant direct appeal of her involuntarily hospitalization to this Court pursuant to West Virginia Code § 27-5-5.

"Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995). Similarly, "questions of constitutionality are also subject to *de novo* review." Syl. Pt. 1, *State v. Rutherford*, 223 W.Va. 1, 672 S.E.2d 137 (2008). Finally, "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." W.Va. R. Civ. P. 52(a) (1998).

On appeal, petitioner argues that the Commissioner failed to safeguard her rights and interests when he failed to consider her "lucid and cogent" testimony disputing the claims regarding her mental health, drug addiction, and alleged suicide attempt. West Virginia Code § 27-5-1(b)(1), provides, in part, that "[t]he Commissioner shall safeguard, at all times, the rights and interests of the individual as well as the interests of the state . . . ." Petitioner denies that she told the hospital crisis worker or the social worker that she attempted suicide or was suicidal. Petitioner further claims that, at the time of the probable cause hearing, she was not suicidal.

West Virginia Code § 27-5-2(f) requires that

> [a]t the conclusion of the [probable cause] hearing, the . . . , commissioner . . . shall find and enter an order stating whether or not there is probable cause to believe that the individual, as a result of mental illness or addiction, is likely to cause serious harm to himself or herself or to others.

According to the record on appeal, the Commissioner heard testimony, as recounted above, and found that petitioner was addicted to medication, was suicidal, and was a danger to herself. As such, the Commissioner made the findings required by West Virginia Code § 27-5-2(f) and his findings were supported by the evidence. Importantly, the Commissioner was entitled to determine the weight and credibility of the testimony before him. *State v. Guthrie*, 194

W.Va. 657, 669, 461 S.E.2d 163, 175 (1995) (stating that "[a]n appellate court may not decide the credibility of witnesses or weigh evidence as that is the exclusive function and task of the trier of fact."). His determination that the testimony of the hospital crisis worker and the social worker were more credible than petitioner's was within his discretion and supported by the record on appeal. Thus, we find no error in the Commissioner's probable cause finding.

Petitioner also argues that she was not drug addicted or mentally ill at the time of the probable cause hearing. She contends that the Commissioner's nonspecific findings regarding her mental health and drug addiction failed to reference the factual evidence, as required by West Virginia Code § 27-5-1(b)(1), which provides that the Commissioner "shall make a written report of his or her findings to the circuit court." Essentially, petitioner argues that the Commissioner failed to set forth the "specific facts upon which these findings of probable cause are based." Petitioner also contends that the Commissioner did not listen to or consider her testimony contesting the allegations or her "uncontroverted" testimony that she did not overdose on insulin.

We find no error in the Commissioner's probable cause order directing petitioner's commitment, as he found that petitioner was suffering from a mental illness and was likely to harm herself. The Commissioner based his finding of mental illness on the following specific facts: petitioner told hospital crisis staff that she attempted suicide; intentionally overdosed on her prescribed insulin; attempted suicide earlier in the day; and would attempt suicide again if she was sent home. Further, a licensed independent clinical social worker examined petitioner and determined that it was probable that she would engage in additional self-harmful behavior. The Commissioner made all of the requisite findings required by West Virginia Code § 27-5-2, which provides that the Commissioner "shall find and enter an order stating whether or not there is probable cause to believe that the individual, as a result of mental illness or addiction, is likely to cause serious harm to himself or herself or to others." The Commissioner found that petitioner was mentally ill and a danger to herself; his findings were based on the testimony of the hospital crisis worker and the social worker regarding their interactions with petitioner. As such, we find no error in the Commissioner's probable cause findings.

Petitioner also contends that the Commissioner's probable cause finding of addiction departed from the statutory definition of addiction, pursuant to West Virginia Code § 27-1-11, and that there was no evidence to support the finding that she was drug addicted or a danger to herself as a result of addiction. According to West Virginia Code § 27-1-11, addiction is "a maladaptive pattern of substance use leading to clinically significant impairment or distress . . . ." The Commissioner found that petitioner, a former nurse, was addicted based upon on her own admission that she was addicted to prescription Valium and "welcomed death." She further testified that she would go through "Valium withdrawal" if the drug was taken away from her. Based on petitioner's own testimony, the Commissioner did not err in finding that petitioner was drug addicted.

Next, petitioner argues that the involuntary commitment statutes are unconstitutionally vague because of the collateral consequences petitioner suffered as a result of the finding that she was drug addicted and mentally ill. Petitioner argues that West Virginia Code §§ 27-5-1 to -11 is unconstitutional, notwithstanding the process set forth in West Virginia Code § 61-7A-5. West

Virginia Code § 61-7A-5(a) provides that

> [a]ny person who is prohibited from possessing a firearm pursuant to the provisions of section seven, article seven of this chapter or by provisions of federal law by virtue solely of having previously been adjudicated to be mentally defective or to having a prior involuntary commitment to a mental institution pursuant to chapter twenty-seven of this code may petition the circuit court of the county of his or her residence to regain the ability to lawfully possess a firearm.

Accordingly, West Virginia Code § 61-7A-5(b) provides that

> [p]etitioners prohibited from possession of firearms due to a mental health disability, must include in the petition for relief from disability: a listing of facilities and location addresses of all prior mental health treatment received by petitioner; an authorization, signed by the petitioner, for release of mental health records to the prosecuting attorney of the county; and a verified certificate of mental health examination by a licensed psychologist or psychiatrist occurring within thirty days prior to filing of the petition which supports that the petitioner is competent and not likely to act in a manner dangerous to public safety.

Petitioner contends that, as an indigent person, she is unable to "afford to go through the process" of removing the existing collateral consequences of her involuntary commitment. Petitioner also contends that she "must engage in an expensive and complicated legal process to have her name removed from the central state mental health registry and have her gun possession privileges restored." Therefore, petitioner claims that she has no meaningful way to exercise her right to have her gun privileges restored simply because she cannot afford the legal process and procedure required by statute. We note, however, that petitioner presented no evidence that she ever attempted to follow the statutory procedure for seeking the removal of her name from the state mental health registry and the restoration of her gun possession rights. The record is also devoid of any evidence concerning petitioner's financial status or the actual costs associated with such a proceeding. West Virginia Code § 61-7A-5 allows an individual, like petitioner, to petition the circuit court for their removal from the central state mental health registry and have their gun possession privileges restored. Notwithstanding petitioner's argument to the contrary,

> we again find that because West Virginia Code § 61-7A-5 sets forth a procedure through which a person may petition the circuit court for the removal of . . . her name from the mental health registry and for the restoration of . . . her right to possess a firearm, such are not collateral consequences that warrant our review. . . .

*In re: Involuntary Hospitalization of T.O.*, No. 16-0095, 2017 WL 562828, at * (W.Va. Feb. 8, 2017).

Because a remedy exists for petitioner's claimed injury, we find no error.

Petitioner also argues that the civil commitment process outlined in West Virginia Code

4

§§ 27-5-1 to -11 is unconstitutionally vague because it does not provide guidance to fact-finders on how to determine whether an individual is a danger to themselves or others. Petitioner contends that the statutory scheme does not require a Commissioner to consider the individual's condition at the time of the probable cause hearing and permits licensed social workers to perform examinations and issue recommendations regarding an individual's alleged mental illness or drug addiction. West Virginia Code § 27-1-12(a) provides that

> "[l]ikely to cause serious harm" means an individual is exhibiting behaviors consistent with a medically recognized mental disorder or addiction, excluding, however, disorders that are manifested only through antisocial or illegal behavior and as a result of the mental disorder or addiction: (1) The individual has inflicted or attempted to inflict bodily harm on another; (2) The individual, by threat or action, has placed others in reasonable fear of physical harm to themselves; (3) The individual, by action or inaction, presents a danger to himself, herself or others in his or her care; (4) The individual has threatened or attempted suicide or serious bodily harm to himself or herself; or (5) The individual is behaving in a manner as to indicate that he or she is unable, without supervision and the assistance of others, to satisfy his or her need for nourishment, medical care, shelter or self-protection and safety so that there is a substantial likelihood that death, serious bodily injury, serious physical debilitation, serious mental debilitation or life-threatening disease will ensue unless adequate treatment is afforded.

According to petitioner, the statutory language "likely to cause serious harm" requires a person to guess at its meaning, is subjective, and leads to unlawful commitments of individuals who pose no real danger to themselves or others. Referencing the Commissioner's reliance on the licensed social worker's diagnosis of petitioner as "suicidal," petitioner contends that the subjective language and the unreliability of the "danger to self" evaluations lead to arbitrary outcomes because no person can satisfy such a vague statute.

As we explained in *State v. Flinn*, "[a] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." 158 W.Va. 111, 117, 208 S.E. 2d 538, 545 (2003). To satisfy substantive due process, "legislative acts must bear a reasonable relationship to proper legislative purpose and be neither arbitrary or discriminatory." *State ex rel. White v. Todt*, 197 W.Va. 334 n. 347, 475 S.E. 2d 426 n. 439(1996).

Here, petitioner does not argue that West Virginia Code §§ 27-5-1 to -11 are ambiguous. Rather, she contends that the statute is unfair regardless of the procedure. While petitioner contends that she posed no danger to herself, her argument is not supported by the evidence on the record. Petitioner told hospital staff that she attempted suicide because she was in chronic pain, intentionally overdosed on her prescribed insulin, and that she would attempt suicide again. Petitioner's argument fails to demonstrate that the process found in West Virginia Code §§ 27-5-1 to -11 is unreasonable, arbitrary, or discriminatory. Thus, her claim that West Virginia Code §§ 27-5-1 to -11 is unconstitutionally vague must fail.

5

Petitioner further contends that the involuntary commitment statutes should require that the Commissioner consider an individual's condition at the time of the probable cause hearing. However, this requirement is already found within the statutory language. West Virginia Code § 27-5-2 requires that when an individual is taken into custody for the purpose of a probable cause hearing, the hearing must be held forthwith following the initial examination. Furthermore, West Virginia Code § 27-1-12(b) requires that

> [i]n making the "likely to cause serious harm" determination, judicial, medical, psychological and other evaluators and decisionmakers should utilize all available information, including psychosocial, medical, hospitalization and psychiatric information and including the circumstances of any previous commitments or convalescent or conditional releases that are relevant to a current situation, in addition to the *individual's current overt behavior*. The rules of evidence shall be followed in making the "likely to cause serious harm" determination . . . .

(Emphasis added). Therefore, the statutory scheme expressly requires that the Commissioner consider an individual's condition at the time of the probable cause hearing. Further, at the probable cause hearing, petitioner admitted that she was clinically depressed and addicted to prescription Valium. As such, we find that West Virginia Code §§ 27-5-1 to -11 are not unconstitutionally vague.

Finally, petitioner contends that the civil commitment process is unconstitutionally vague because it permits licensed social workers to perform examinations and issue recommendations regarding an individual's alleged mental illness or drug addiction. According to petitioner, the statutory language "likely to cause serious harm" requires a person to guess at its meaning, is subjective, and leads to unlawful commitments of individuals who pose no real danger to themselves or others. We disagree.

West Virginia Code § 27-5-2(e) sets forth a specific list of mental health professionals that may serve as licensed examiners under the statute, including licensed independent clinical social workers.[2] Additionally, West Virginia Code § 27-5-2(e) provides that the licensed independent clinical social worker

> may only perform the examination if he or she has previously been authorized by an order of the circuit court to do so, the order having found that the licensed independent clinical social worker . . . has particularized expertise in the areas of

---

[2]West Virginia Code § 27-5-2(e) provides that

> [t]he circuit court, mental hygiene Commissioner or designated magistrate may enter an order for the individual named in the application to be detained and taken into custody for the purpose of holding a probable cause hearing . . . for the purpose of an examination of the individual by a physician, psychologist, a licensed independent clinical social worker practicing in compliance with article thirty, chapter thirty of this code.

mental health and mental hygiene or addiction sufficient to make the determinations as are required by the provisions of this section.

Therefore, West Virginia Code § 27-5-2 provides that licensed independent clinical social workers are fully qualified to assess and diagnose mental hygiene patients, like petitioner, in order to identify mental illness or addiction issues and render their opinion as to the likelihood of harm to one's self. Further, it is entirely within the purview of our legislature to determine who is qualified to make such mental health and mental hygiene determinations. *See Kansas v. Hendricks*, 521 U.S. 346, 347 (1997) (affirming that state legislatures were never required to "adopt any particular nomenclature in drafting civil commitment statutes. Rather, we have traditionally left to legislators the task of defining terms of a medical nature that have legal significance."). In petitioner's case, and as previously stated, the licensed independent clinical social worker based her determination that petitioner was likely to cause serious harm to herself because petitioner attempted suicide and stated that she would attempt suicide again. As such, we find that West Virginia Code §§ 27-5-1 to -11 are not unconstitutionally vague.

Upon our review, and based on the facts and circumstances of this case, we affirm the order of the Commissioner entered on September 12, 2015.

Affirmed.

**ISSUED**: April 10, 2017

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

7